**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 05-98-DLB**

**BBS TECHNOLOGIES, INC**                                                                      **PLAINTIFF**


**vs.**                              **MEMORANDUM OPINION AND ORDER**


**REMINGTON ARMS CO., INC.**                                                     **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I.      **Introduction**

Plaintiff commenced this action against Defendant after it terminated the parties'

Master Purchasing Agreement.  Plaintiff initially filed suit in Boone County Circuit Court on

April 21, 2005, seeking a declaratory judgment and alleging breach of contract, bad faith,

promissory estoppel, negligent misrepresentation, and unfair trade practices.  Defendant

timely removed the case on May 18, 2005 on the basis of diversity jurisdiction.

This matter is before the Court upon Defendant's motion to dismiss, or in the

alternative to stay and compel arbitration (Doc. # 5).  Plaintiff filed a response (Doc. # 9),

to which Defendant replied (Doc. # 11).  The motion having been fully briefed, it is now ripe

for review.

II.      **Factual and Procedural Background**

This case arises out of a contract dispute between BBS Technologies, Inc. (BBS)

and Remington Arms Company (Remington Arms).  BBS is in the business of

manufacturing small dimension, high performance braided and twisted composite lines.

1

Remington Arms sells firearms, ammunition, and hunting products.  At all times relevant to this proceeding, Remington Arms also sold a fishing line known as Stren.®

On September 1, 2001, the parties entered into a "Master Purchasing Agreement" (MPA), under which BBS agreed to provide spooling and packaging services for Remington Arms' Stren® division.  Prior to contracting with BBS, Remington Arms obtained these services from National Fishing Line, Inc. for more than 40 years.  Although the terms of the MPA expressly provided that it would expire on August 31, 2003, BBS alleges that Remington Arms continually promised a similar long-term relationship.  The MPA also provided, in pertinent part:

> The parties agree to put forth their best efforts to resolve any disputes arising under this Agreement through negotiation.  If any dispute cannot be resolved after good faith negotiation, the parties agree to submit the dispute to mediation, with a mediator chosen jointly.  If the dispute cannot be settled through mediation, the parties agree to submit the dispute to binding arbitration under the auspices of the American Arbitration Association and in accordance with its Rules of Commercial Arbitration then in effect.

Approximately one year after the MPA was executed, the parties amended it to reflect the following changes: 1) BBS agreed to purchase additional material handling equipment at a cost of $85,000, and 2) BBS exercised its right to decrease the packaging purchasing prices.  The amended agreement was executed on October 7, 2002, and was scheduled to expire on October 7, 2005.  In late 2003/early 2004, however, Remington Arms sold its Stren® fishing line to Pure Fishing.  On February 6, 2004, Remington Arms and Pure Fishing executed an asset purchase agreement for approximately $44 million.  Four days later, on February 10, 2004, Remington Arms exercised its right to terminate the MPA for its convenience and without cause, and provided the requisite 120 days notice to BBS.

2

Upon termination of their agreement, BBS presented Remington Arms with several outstanding invoices.  By letter dated April 8, 2004, Remington Arms offered to settle the invoices for $42,663.91.  BBS rejected that offer by letter dated May 13, 2004, and made a counter-offer of $850,000, which Defendant, in turn, rejected on May 21, 2004.  The parties continued to correspond over the next few months, and participated in a telephonic settlement conference on August 24, 2004.  When the parties failed to make any progress, Remington Arms filed an online demand for arbitration with the American Arbitration Association (AAA).[1]  The parties agreed, however, to stay arbitration pending mediation at a neutral location.

Mediation was scheduled for November 30, 2004 in Knoxville, Tennessee. However, due to scheduling conflicts, it was rescheduled for December 21, 2004. However, approximately three weeks before the mediation was to occur, Remington Arms received a letter from Heritage Graphics, indicating that it had performed printing work for BBS, for which it had not been compensated.  That December 3, 2004 letter directed Remington Arms to pay Heritage the amounts due and owing ($52,420.82) by December 13, 2004, and threatened litigation if Remington Arms did not comply.[2]  Believing that the letter was an attempt by Heritage and BBS to extort money from it, Remington Arms suggested that the mediation be cancelled.  BBS agreed to the cancellation.

Remington Arms subsequently filed a declaratory judgment action against Heritage and BBS in North Carolina state court on February 22, 2005.  In that case, BBS moved to

---

[1]The demand was filed on August 30 or September 1, 2004.

[2]Plaintiff's attorney was carbon copied on the letter.

dismiss, or in the alternative to stay the proceedings and compel arbitration, the same relief sought by Remington Arms in the case herein.  That motion was summarily denied on March 28, 2005 by the state court judge.  Discovery proceeded in the state court case, but BBS and Remington Arms continued to discuss the possibility of alternative dispute resolution.  That possibility was foreclosed, however, when BBS filed the instant suit on April 21, 2004.  In the meantime, Remington Arms recontacted the AAA, requesting that the stayed arbitration move forward, and filed the pending motion seeking the same.

### III.  <u>Arguments of the Parties</u>

In its motion, Remington Arms argues that pursuant to the terms of the MPA, the current dispute is subject to arbitration.  As a result, the Court should dismiss the complaint to permit the binding arbitration to occur.  Alternatively, Remington Arms requests the Court stay this case and compel arbitration.

BBS counters that the issues raised in its complaint are not subject to arbitration. More specifically, BBS asserts that Remington Arms did not comply with the terms of the MPA's dispute resolution provisions because it did not negotiate in good faith or participate in mediation.  BBS submits that each are conditions precedent to binding arbitration under the MPA.  BBS also argues that by filing a complaint in North Carolina state court, and propounding discovery requests, Remington Arms has waived its right to compel arbitration in this matter.  Finally, BBS argues that not all of its claims are within the scope of the arbitration clause.

## IV.    Analysis

It is well-settled in American law that courts should enforce private agreements to resolve disputes by mandatory binding arbitration.  The Federal Arbitration Act (FAA) codifies this principle:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  Similarly, under the Kentucky Uniform Arbitration Act, an arbitration agreement  "is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract."  K.R.S. § 417.050.

Section 2 of the FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995) (*quoting Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)).  "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991).   "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Id.* (citations omitted).

The Supreme Court has recognized that the FAA recognizes a federal public policy favoring arbitration, and that courts must vigorously enforce arbitration clauses.  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Furthermore,

"[i]t is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Hill v. Hillard*, 945 S.W.2d 948, 951 (Ky. App. 1996), *cert. denied*, 522 U.S. 981(1997). The FAA invokes a national policy favoring arbitration, and preempts any state law which is in conflict. *See e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).

> In *Stout v. J.D. Byrider*, the Sixth Circuit stated:
>
> When considering a motion to stay proceedings and compel arbitration under Federal Arbitration Act (FAA), a court has four tasks: court (1) must determine whether the parties agreed to arbitrate, (2) must determine the scope of that agreement, (3) if federal statutory claims are asserted it must consider whether Congress intended those claims to be nonarbitrable, and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

228 F.3d 709, 714 (6th Cir. 2000).

In response to Remington Arms' motion to dismiss, or in the alternative to stay the proceedings and compel arbitration, BBS advances three arguments. First, BBS alleges that Remington Arms failed to comply with the MPA's dispute resolution provision by refusing to negotiate in good faith, and foregoing mediation. Second, BBS maintains that Remington Arms waived its right to arbitrate when it filed suit in North Carolina state court and propounded discovery requests related to "arbitrable issues." Third, BBS asserts that several of its claims are outside the scope of the arbitration clause. For the reasons that follow, the Court concludes that Defendant's motion is well-taken and arbitration is compelled in this case.

As correctly noted by BBS, the MPA at paragraph 45 expressly provides that good faith negotiation and mediation are conditions precedent to arbitration. According to BBS,

Remington Arms' conduct "fall[s] severely short of the good faith negotiation and mediation efforts required under the MPA's Dispute Resolution Provision," and, in support thereof, BBS chronicles the parties' unsuccessful attempts to resolve their disputes.  However, the correspondence attached to the parties' briefs tells a different story.

Upon termination of their agreement, both sides made a good faith effort to settle their disputes.  Although BBS characterizes Remington Arms' efforts as "low ball" tactics, the Court believes that the back and forth, low ball high ball negotiations which took place between BBS and Remington Arms are nothing unusual.  In fact, just because one side views another side's settlement offer as unreasonable does not mean that the offer was made in bad faith.  After their initial settlement demands, the parties continued to correspond over the next few months, culminating in a telephonic settlement conference on August 24, 2004.  Unable to make any progress, Remington Arms filed an online demand for arbitration with the American Arbitration Association.  However, the parties agreed to stay arbitration pending mediation at a neutral location.

After scheduling mediation in Knoxville, Remington Arms was placed on notice that a third party, Heritage Graphics, was seeking to recover money from it for work it had performed for BBS.  Remington Arms thereafter suggested, and BBS agreed to cancel, the mediation.  Thus, the facts do not support BBS' claims that there was no good faith effort to resolve the parties' disputes through negotiation and/or mediation.  Moreover,  whether Defendant complied with the procedural requirements set forth in the MPA regarding the arbitration of disputes is a determination more properly presented to the arbitrator.  *See Barge, Waggoner, Sumner & Cannon v. Tritel Communications, Inc.*, No. 2001 WL 1776756, at *4 (W.D. Ky. June 12, 2001) (unpublished).

BBS' contention that Remington Arms waived its right to arbitration is similarly unavailing. First, BBS claims that the waiver occurred when Remington Arms filed the declaratory judgment action in North Carolina state court, naming BBS as a defendant. As further evidence of conduct inconsistent with the right to arbitrate, BBS points to the fact that Remington Arms propounded discovery requests in the North Carolina lawsuit that focused on "arbitrable claims."

The record reveals that Remington Arms initiated its lawsuit in North Carolina Superior Court on February 22, 2005, approximately five months <u>after</u> invoking its right to arbitrate the current dispute, when it filed an online demand for arbitration with the AAA. The Court concludes, therefore, that any purported waiver occurred *after* Remington Arms had already invoked the right at issue, a fact that is fatal to BBS' waiver argument. The Court also finds it axiomatic that BBS now seeks to avoid the very result it tried to achieve in the North Carolina action. While the North Carolina state court judge did not provide any explanation for denying Remington Arms' motion to dismiss, or in the alternative to stay and compel arbitration, the Court presumes that he concluded that the Heritage Graphics's claim against Remington Arms was not subject to arbitration as Heritage was not a party to the MPA.

Finally, the Court must determine whether the scope of the dispute resolution provision of the MPA is broad enough to encompass the claims asserted by BBS in this case. BBS argues that several of its claims - in particular, those for bad faith, detrimental reliance, negligent misrepresentation, and unfair trade practices - stand on their own, bear no relationship to the MPA, and are not arbitrable. The question of whether a contract's arbitration clause requires arbitration of a given dispute remains a matter of contract

interpretation. *Brinkerhoff v. Zachry Constr. Corp.*, 2005 WL 1661693, at *5 (S.D. Ohio July 15, 2005); *see Seaboard Coast Line R. Co. v. Trailer Train Co.,* 690 F.2d 1343, 1348 (11th Cir. 1982) citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 242 (1962).   Where no ambiguity exists in an agreement to arbitrate, the language of the contract defines the scope of disputes subject to arbitration. *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002).   Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).  "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986) (citations omitted).

> The dispute resolution provision in this case states, in relevant part:

> The parties agree to put forth their best efforts to resolve *any disputes arising under this Agreement* through negotiation.  If any dispute cannot be resolved after good faith negotiation, the parties agree to submit the dispute to mediation, with a mediator chosen jointly.  If the dispute cannot be settled through mediation, the parties agree to submit the dispute to binding arbitration ....

MPA at ¶ 45.0 (emphasis added)

BBS characterizes the claims listed above as "torts," and argues that they do not "arise under" the MPA.  The Court disagrees.  First, the duty of good faith allegedly breached by Remington Arms is a corollary to BBS' breach of contract claim.  Second, BBS' claims of detrimental reliance and negligent misrepresentation center on promises made by Remington Arms that the purchase prices would be increased - promises that ultimately went unfulfilled.  These promises were made in response to specific requests by

9

BBS, which were authorized under the terms of the MPA. (*See* MPA at ¶ 18). Finally, BBS claims that Remington Arms engaged in "unfair and deceptive acts or practices in its commercial dealings with [it]." The Court concludes that any commercial dealings between the parties had their origins in, and were dictated by, the MPA.

The plain language of the dispute resolution clause clearly indicates the parties' intention to arbitrate any disputes arising under the MPA. Because the claims raised in the complaint herein arise under the MPA, they are subject to binding arbitration. In *Stout, supra,* 228 F.3d at 714, the Sixth Circuit stated: "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." Because all claims raised by BBS are subject to a valid, enforceable, arbitration provision, it is not necessary to stay the proceedings pending binding arbitration.

Moreover, where the terms of an agreement provide that the arbitrator's decision is final and binding, federal courts have held that dismissal is appropriate on that basis, once it has been determined that arbitration indeed must be compelled. *Raasch v. NCR Corp.,* 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). However, dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice. *Bauer v. RBX Industries, Inc.,* 368 F.3d 569, 581 (6th Cir. 2004).

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1.      Defendant's Motion to Dismiss, or in the Alternative to Stay and Compel Arbitration (Doc. # 5) be, and it hereby is, **GRANTED IN PART** as to dismissal of this case, and **DENIED IN PART** as to the alternative relief of staying the case pending arbitration. Based on the Court's interpretation of the MPA, the Court finds that it does not have jurisdiction over this matter, the dismissal is pursuant to Rule 12(b)(1), Federal Rule of Civil Procedure.

2.      This matter shall be **DISMISSED WITHOUT PREJUDICE** and stricken from the Court's docket.  A separate Judgment shall enter concurrently herewith.

This 22nd day of November, 2005.

**Signed By:**

_David L. Bunning_   *DB*

**United States District Judge**

G:\DATA\Opinions\2-05-98-MOO-Granting-MTD.wpd